**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3098
_____

MOHAMED BARRY,
                                        Appellant

v.

DAVID ANDERSON, in his official capacity as Acting Deputy Director of the U.S.
Marshals Service; KEVIN MCALEENAN, in his official capacity as Acting United
States Secretary of Homeland Security; DEPORTATION OFFICER RODY ZAMAR,
Badge No. 4082; DONALD W. WASHINGTON, in his office capacity as Director of the
U.S. Marshals Service; Unknown Deportation Officer #1; Unknown Deportation Officer
#2; Unknown Assistant Field Officer Director #1; Unknown Assistant Field Officer
Director #2; Unknown U.S. Marshals Regional Fugitive Task Force Officer #1;
Unknown U.S. Marshals Regional Fugitive Task Force Officer #2; Unknown U.S.
Marshals Regional Fugitive Task Force Officer #3; Unknown U.S. Marshals Regional
Fugitive Task Force Officer#4; Unknown Fugitive Task Force Officer #5; Unknown U.S.
Marshals Regional Fugitive Task Force Officer #6; Unknown U.S. Marshals Regional
Fugitive Task Force Officer#7; Unknown U.S. Marshals Regional Fugitive Task Force
Officer #8; Unknown U.S. Marshals Regional Fugitive Task Force Officer #9; Unknown
U.S. Marshals Regional Fugitive Task Force Officer #10
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-19-cv-10216)
District Judge:  Honorable Evelyn Padin
_____

Argued:  November 15, 2023
_____

Before:  CHAGARES, Chief Judge, MATEY and FUENTES, Circuit Judges

(Filed:  December 6, 2023)

Rasheedah Terry **[ARGUED]**
409 Halsey Street
Newark, NJ 07102

  Counsel for Plaintiff-Appellant Mohamed Barry

Matthew J. Mailloux **[ARGUED]**
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

J. Andrew Ruymann
Office of the United States Attorney
402 E State Street
Suite 430
Trenton, NJ 08608

  Counsel for Defendant-Appellee Rody Zamar

_____

OPINION[*]

_____

CHAGARES, Chief Judge.

Mohamed Barry appeals from the District Court's grant of summary judgment to defendant Rody Zamar. Barry alleged that Zamar, an Immigration and Customs Enforcement ("ICE") Officer, used excessive force against him while executing an immigration administrative warrant at his apartment. The District Court, however, concluded that Barry lacked a viable claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and it also denied his motion for

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

leave to file a third amended complaint and his motion for reconsideration of the same. We agree with the District Court that under Supreme Court precedent, Barry's claim presents a new Bivens context and that at least one special factor counsels against recognizing a new Bivens remedy. We also conclude that the District Court did not abuse its discretion in denying Barry's untimely request to amend his complaint and his motion for reconsideration. Thus, we will affirm the District Court's orders in full.

I.

A.[1]

We write primarily for the parties and recite only the facts essential to our decision. A ten-officer federal task force conducted a raid at Barry's Newark apartment in 2017. Although the task force consisted primarily of members of the United States Marshals Service, it also included ICE Officer Zamar. The task force sought to execute an immigration administrative warrant on Barry's brother, Mamadou, who was living with him. Mamadou had been erroneously released from prison just one day before the raid. Mamadou had an extensive criminal history and was subject to an active ICE detainer and immigration administrative warrant for his return to ICE custody.

Barry, a United States citizen, was in his apartment when the task force arrived. A member of the task force knocked on Barry's door and announced that they were police. Barry opened the door and stepped back when he saw task force members pointing machine guns at him. Each officer wore his official badge. Barry told the task force his

---

[1] At the summary judgment stage, we draw all reasonable factual inferences in Barry's favor. Tolan v. Cotton, 572 U.S. 650, 656–57 (2014).

name upon being asked and also showed them his identification. According to Barry, although he did not resist or flee, members of the task force attacked him and handcuffed him. One task force member allegedly put his knee on Barry's neck and another put his knee on his back. Barry was dragged down the stairs from the third floor. It is undisputed that Barry sustained injuries to his head, chest, neck, and ribs from the incident. He also later claimed that he suffered injuries to his feet, shin, and lower leg.

B.

Barry, represented by counsel, initially filed suit under 42 U.S.C. § 1983 against Zamar, senior federal officials, and other unknown officers. Barry later amended his complaint to add another defendant. After the named defendants (including Zamar) moved to dismiss the first amended complaint, the parties consented to Barry filing a second amended complaint, which replaced his section 1983 claims with Bivens claims. The named defendants again moved to dismiss, and the parties later consented to dismissal of several defendants. The case then proceeded to discovery on the single remaining Bivens claim against the single remaining defendant — Zamar.

Barry moved for leave to file a third amended complaint, over ten months after the District Court's scheduling order deadline and two years after he filed his second amended complaint. The proposed third amended complaint added five additional defendants. The District Court denied Barry's motion on the ground that he lacked good cause for his untimely motion. Barry filed a motion for reconsideration, which the District Court also denied.

Zamar then filed a motion for summary judgment, which the District Court

4

granted. The District Court determined that material factual disputes existed concerning whether Barry was cooperative during the incident and the level of Zamar's involvement in causing Barry's injuries. Nonetheless, it concluded that Barry lacked a viable Bivens claim against Zamar because the enforcement of immigration law by an immigration officer presented a new Bivens context and that special factors weighed against recognizing a new Bivens remedy. The District Court declined to reach the question of whether Zamar was entitled to qualified immunity. Barry timely appealed.

## II.

We will first consider whether Barry has presented a viable Bivens claim. Then we will consider whether the District Court abused its discretion in denying Barry a third opportunity to amend his complaint.

## A.[2]

In Bivens, the Supreme Court recognized an implied damages remedy under the Fourth Amendment against federal narcotics officers who engaged in an illegal search and seizure. Xi v. Haugen, 68 F.4th 824, 832 (3d Cir. 2023). In the past few decades, however, "the Supreme Court has pulled back the reins" and, apart from two other Bivens contexts not relevant here, "repeatedly refused to extend the *Bivens* remedy to any other amendment, context, or category of defendant." Id. Expanding Bivens is now, in a word, "disfavored." Id. at 832 (quoting Ziglar v. Abbasi, 582 U.S. 120, 135 (2017)).

---

[2] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review of a summary judgment decision. Ellis v. Westinghouse Elec. Co., LLC, 11 F.4th 221, 229 (3d Cir. 2021).

Under the Court's recent guidance, we must apply a two-step inquiry to determine whether a Bivens claim is viable. Egbert v. Boule, 596 U.S. 482, 492 (2022). We first ask whether Barry's case presents a new Bivens context. Id. If it does, we must next determine if special factors counsel against recognizing a new Bivens remedy. Id. We will consider each step of the inquiry below, while being mindful of the Court's observation that this two-step inquiry "often resolve[s] to a single question: whether there is any reason to think Congress might be better equipped to create a damages remedy." Id.

1.

A case presents a new Bivens context if it is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." Ziglar, 582 U.S. at 139. This "threshold test" is "easily satisfied." Xi, 68 F.4th at 834 (citation omitted). The Supreme Court has provided examples of meaningful differences; as relevant here, these include a "new category of defendants" and "the statutory or other legal mandate under which the officer was operating." Ziglar, 582 U.S. at 135, 139–40. The District Court concluded that Barry's case presented a new Bivens context because Zamar was an ICE officer who was enforcing immigration law during the task force raid. We agree.

Our sister court of appeals' decision in Tun-Cos v. Perrotte, 922 F.3d 514 (4th Cir. 2019), is instructive. There, nine Latino men brought Bivens claims against ICE agents who, among other things, invaded their homes without a warrant. Id. at 517. The court concluded that the plaintiffs' action arose in a new Bivens context because unlike the federal narcotics officers enforcing criminal law in Bivens, the federal officers were ICE

6

agents operating under immigration law, which was "substantively distinct" from criminal law because "[i]mmigration enforcement is by its nature addressed toward noncitizens, which raises a host of considerations and concerns that are simply absent in the majority of traditional law enforcement contexts." Id. at 524.

We are persuaded by the reasoning in Tun-Cos. Because Barry's case is also against an ICE agent (a new category of defendant) enforcing immigration law (a new statutory mandate), it arises in a new Bivens context. Cf. Elhady v. Unidentified CBP Agents, 18 F.4th 880, 886 (6th Cir. 2021) ("Every other circuit . . . faced with an invitation to expand *Bivens* to the border/immigration context has held firm."), cert. denied sub nom. Elhady v. Bradley, 143 S. Ct. 301 (2022).

Barry raises two primary counterarguments, but neither is persuasive. First, he contends that his case is "indistinguishable" from Bivens because "[i]n both cases, the plaintiffs alleged that federal agents entered their homes, inflicted excessive force and arrested them without probable cause." Barry Br. 14–15. But the Supreme Court has expressly rejected such similarities as "superficial." Egbert, 596 U.S. at 495.

In Egbert, Robert Boule was a United States citizen and Border Patrol confidential informant who owned a bed-and-breakfast near the United States–Canadian border. Id. at 488–89. Boule claimed that a Border Patrol agent violated his Fourth Amendment rights by using excessive force against him while conducting a search of his property to investigate the immigration status of one of his foreign guests. Id. In describing the similarities between Boule's case and Bivens as "superficial," the Supreme Court clarified that even "almost parallel circumstances" are insufficient "to support the judicial

7

creation of a cause of action." Id. at 495; see Xi, 68 F.4th at 834 ("*Egbert* tells us that 'almost parallel circumstances' are not enough[.]'" (citation omitted)). So too, with Barry. Despite sharing some superficial similarities with Bivens, Barry's case meaningfully differs from Bivens, as described above. Thus, it presents a new Bivens context.

Second, Barry claims that his case does not present a new Bivens context because, in his view, Zamar was enforcing criminal, not immigration, law against him. The gist of Barry's theory appears to be that Zamar was acting in an immigration capacity with respect to his brother Mamadou but in a criminal capacity with respect to Barry. Egbert, however, forecloses this kind of argument. Recall that in Egbert, Boule was also a United States citizen, and Boule's foreign guest, not Boule, was the subject of Agent Egbert's immigration investigation. Yet the Supreme Court did not consider those distinctions relevant for purposes of its two-step inquiry. To the contrary, the Court admonished the lower court for conducting its analysis at "too granular a level." Egbert, 596 U.S. at 496. The relevant question in Egbert was far broader: "we ask here whether a court is competent to authorize a damages action . . . against Border Patrol agents generally." Id. We thus decline to dive into the granular details of Barry's case in assessing whether it presents a new Bivens context.

2.

Having established that Barry's case presents a new Bivens context, we now turn to whether special factors counsel against extending a Bivens remedy to this context. A special factor exists whenever "there is *any* rational reason (even one) to think that

8

*Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" Egbert, 596 U.S. at 496 (emphases in original) (quoting Ziglar, 582 U.S. at 136); see also id. ("[E]ven if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." (emphasis in original) (quoting Ziglar, 582 U.S. at 148)). The District Court found two special factors here: Congress's heavy involvement in immigration enforcement, and its repeated refusal to provide a damages remedy for plaintiffs like Barry. We need not reach those potential special factors, however, because another special factor plainly forecloses relief here: the existence of an alternative remedial scheme.

The Supreme Court explained in Egbert that "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." 596 U.S. at 498. We agree with the court in Tun-Cos that the Immigration and Nationality Act ("INA") "does indeed contain such a remedial structure." 922 F.3d at 526. The court in Tun-Cos identified federal regulations that establish standards for immigration enforcement activity under the INA and an expedited internal review process of alleged violations of those standards. Id. (citing 8 C.F.R. §§ 287.8, 287.10). The Supreme Court in Egbert also cited the internal review process in § 287.10 in concluding that an alternative remedial scheme foreclosed Bivens relief. 596 U.S. at 497.

We recognize this remedial scheme might prove to be cold comfort to Barry, who seeks an adversarial process and monetary damages, but the Supreme Court has declared

9

that the government's procedures need not be as effective as an individual damages remedy to foreclose Bivens relief. Egbert, 596 U.S. at 497–98; Xi, 68 F.4th at 837. We therefore conclude that Barry lacks a viable Bivens action.[3]

B.[4]

We turn now to Barry's appeal of the District Court's order denying him leave to file a third amended complaint and its order denying his motion for reconsideration of the same. Although Barry's notice of appeal failed to designate these decisions, we have appellate jurisdiction to review these interlocutory orders because they merged into the final judgment for purposes of appeal. Fed. R. App. P. 3(c)(4); R & C Oilfield Servs. LLC v. Am. Wind Transp. Grp. LLC, 45 F.4th 655, 659 (3d Cir. 2022).

The District Court denied Barry's motion for leave to amend because he failed to show good cause for filing his motion more than ten months after the scheduling order's deadline for amending a complaint. Then, as now, Barry argues that he was unable to obtain sufficient information about the five new defendants he sought to add until after the February 1, 2021 deadline. But as the District Court pointed out, even after Barry learned about these defendants' involvement in the incident, he waited more than eight months to file his motion. We have considered Barry's arguments and conclude that the

---

[3] We have no need to reach the separate question of whether Zamar is entitled to qualified immunity. Bistrian v. Levi, 912 F.3d 79, 96 n.25 (3d Cir. 2018).

[4] We review both a district court's decision denying leave to amend a complaint and its decision denying reconsideration of the same for abuse of discretion. United States ex rel. Ascolese v. Shoemaker Constr. Co., 55 F.4th 188, 193 (3d Cir. 2022).

District Court acted well within its discretion in denying him leave to amend and reconsideration.

III.

For the foregoing reasons, we will affirm the District Court's order granting Zamar's motion for summary judgment and its orders denying Barry's motion for leave to amend his complaint and motion for reconsideration.